**2013 UT App 248**

# THE UTAH COURT OF APPEALS

JOHN BELL,
Petitioner and Appellee,
*v.*
STEPHANIE WADSWORTH BELL,
Respondent and Appellant.

Opinion
No. 20110716-CA
Filed October 18, 2013

Second District Court, Farmington Department
The Honorable Robert Dale
No. 094701611

Stephanie Wadsworth Bell, Appellant Pro Se
Terry R. Spencer, Attorney for Appellee

SENIOR JUDGE RUSSELL W. BENCH authored this Opinion, in
which JUDGES CAROLYN B. MCHUGH and
MICHELE M. CHRISTIANSEN concurred.[1]

BENCH, Senior Judge:

¶1      Stephanie Wadsworth Bell (Wife), pro se, appeals from the
trial court's Findings of Facts and Conclusions of Law and Order
Granting Decree of Divorce. We affirm in part and reverse and
remand in part.

---

[1]The Honorable Russell W. Bench, Senior Judge, sat by
special assignment as authorized by law. *See generally* Utah Code
Jud. Admin. R. 11-201(6).

BACKGROUND

¶2      John Bell (Husband) and Wife were married in 1984. The parties have five grown children and two minor children. The two minor children are C.E.B., who has cerebral palsy, and N.B.

¶3      Husband filed a complaint for divorce seeking physical custody of the minor children.[2] On May 24, 2011, the guardian ad litem (the GAL) filed a motion for an order to show cause. The GAL alleged that Wife had willfully violated an earlier court order by refusing to take N.B. to the therapist chosen by the GAL.

¶4      On June 20, 2011, the trial court entered its findings of fact and conclusions of law. The court determined that Wife should be awarded sole physical custody of the minor children and awarded the parties joint legal custody. The court found that Husband earned $5,212.76 in monthly income from the State of Utah. The court imputed an additional $1,200 per month to Husband for his part-time employment with Eagle Gate College. The trial court also imputed income of $1,260 per month to Wife.

¶5      In calculating child support, the trial court considered Husband's income from his employment with both the State of Utah and Eagle Gate College "in light of the high expenses, including toiletries and supplements, incurred by the parties' minor child, C.E.B., due to his handicaps." The court determined that Husband should pay child support in the amount of $1,202.88 per month. The court also determined that child support for C.E.B. should be terminated when he turns eighteen years of age to allow C.E.B. to obtain the Social Security and Medicaid benefits for which he will then be eligible. The court clarified that termination of child support for C.E.B. was premised upon C.E.B. receiving such

---

[2]At the time of the complaint, three of the parties' children were minors. In addition to N.B. and C.E.B., Husband sought custody of the parties' daughter H.A.B.

benefits at age eighteen. The court further determined that each party be allowed to claim one minor child as a dependent each year until the oldest child, C.E.B., is no longer eligible to be claimed as a dependent for tax purposes.

¶6     The court determined that Husband's expenses, after payment of child support but before alimony, were $2,500 per month and Wife's expenses, including mortgage payments, were $3,700 per month. The court awarded alimony to Wife, stating,

> The Court finds, applying the *Jones* factors and taking into consideration the tax treatment of alimony payments, that it is fair and equitable that [Wife] should be awarded $1,800 per month alimony, payable directly by [Husband] to [Wife] in two equal payments to be made on or before the 10th and 25th of each month, respectively.

¶7     The trial court awarded the marital home valued at $190,000 to Wife, which award included the equity of $94,000 and mortgage obligations. In light of this award to Wife, the court awarded Husband $119,000 from his 401(k) and 457 accounts. The court also awarded Wife her *Woodward* share of Husband's retirement pension plan with the State of Utah. *See generally Woodward v. Woodward*, 656 P.2d 431 (Utah 1982). The court determined that Husband should pay $4,000 toward Wife's attorney fees in addition to a previously ordered $375 fee award.

¶8     The trial court also determined that Wife had violated the court's earlier order for therapy by intentionally interfering with N.B.'s counseling with the therapist selected by the GAL. The court ordered Wife to serve five days in jail for contempt. The court stayed the jail sentence based upon counsel's representation that Wife would heed the order in the future.

ISSUES AND STANDARDS OF REVIEW

¶9      Although Wife attempts to assert multiple issues in her brief, this case turns on the merits of the following issues.[3]

¶10     Wife first argues that the trial court erred in awarding the parties joint legal custody when neither party filed the requisite parenting plan. We review custody determinations under an abuse of discretion standard, *Hudema v. Carpenter*, 1999 UT App 290, ¶ 21, 989 P.2d 491, giving the trial court broad discretion to make an initial custody award, *see Black v. Hennig*, 2012 UT App 259, ¶ 10, 286 P.3d 1256.

¶11     Wife next argues that the trial court erred in its child support determination by imputing income to her for purposes of calculating child support without determining her ability to produce income and by failing to consider the extraordinary expense of caring for C.E.B. "We review a trial court's child support order for an abuse of discretion." *Connell v. Connell*, 2010 UT App 139, ¶ 7, 233 P.3d 836.

¶12     Wife asserts that the trial court erred in its division of the marital estate. "Trial courts have considerable discretion in determining . . . property distribution in divorce cases, and [their decisions] will be upheld on appeal unless a clear and prejudicial abuse of discretion is demonstrated." *Trubetzkoy v. Trubetzkoy*, 2009 UT App 77, ¶ 8, 205 P.3d 891 (omission and alteration in original) (citation and internal quotation marks omitted). "Indeed, the trial court's discretion is so broad that its actions enjoy a presumption of validity." *Id.* (citation and internal quotation marks omitted).

¶13     Wife also asserts that the trial court erred by failing to award sufficient attorney fees. "[W]e review a trial court's decision regarding attorney fees in a divorce proceeding for an abuse of

---

[3]Husband also asserts that the court erred in several particulars, but he filed no cross-appeal.

discretion." *Connell*, 2010 UT App 139, ¶ 6 (citation and internal quotation marks omitted).

ANALYSIS

I. Joint Custody

¶14    Wife maintains, and Husband agrees, that the trial court erred in awarding joint legal custody of the minor children to the parties in this matter because neither party filed a parenting plan as required by Utah Code section 30-3-10.2(1). In support of her argument, Wife cites *Trubetzkoy v. Trubetzkoy*, 2009 UT App 77, 205 P.3d 891, a case that she argues requires the filing of a parenting plan by one or both parties as a prerequisite to an award of joint legal custody. *See id.* ¶ 13 ("Reading the statutory provisions as a whole, we conclude that the legislature unambiguously provided that joint legal custody is available 'if one or both parents have filed a parenting plan . . . and [the trial court] determines that joint legal custody . . . is in the best interest of the child.' [Utah Code Ann.] § 30-3-10.2(1). Because neither party filed a parenting plan, joint legal custody was unavailable." (omissions in original) (emphasis omitted)).

¶15    Although Wife may not have adequately preserved this argument below, we are generally "unwilling to disregard controlling authority that bears upon the ultimate resolution of a case solely because the parties did not raise it below." *Patterson v. Patterson*, 2011 UT 68, ¶ 18, 266 P.3d 828; *see also id*. ¶ 13 ("Our preservation requirement is self-imposed and is therefore one of prudence rather than jurisdiction. Consequently, we exercise wide discretion when deciding whether to entertain or reject matters that are first raised on appeal."). The *Trubetzkoy* case Wife cites is controlling authority for the proposition that the court may not award joint legal custody to the parties absent the filing of a parenting plan. The parties concede that neither filed a parenting plan. Because neither party filed a parenting plan, the trial court

exceeded its discretion in awarding joint legal custody to the parties. As a result, we reverse the trial court's custody award and remand this issue to the court.

## II. Child Support/Imputation of Income

¶16    Wife next argues that the trial court erred in its child support determination by imputing income to her for purposes of calculating child support. She asserts that the court's imputed monthly income determination to her of $1,260 is not adequately supported by the evidence. Husband argues that Wife has failed to marshal the evidence. "'[T]o properly discharge the [marshaling] duty . . . , the challenger must present, in comprehensive and fastidious order, every scrap of competent evidence introduced at trial which *supports* the very findings the appellant resists.'" *Oneida/SLIC v. Oneida Cold Storage & Warehouse, Inc.*, 872 P.2d 1051, 1053 (Utah Ct. App. 1994) (second alteration and omission in original) (quoting *West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1315 (Utah Ct. App. 1991)).

¶17    Wife attempts to meet her marshaling burden by setting forth some of the evidence in support of the trial court's imputation of income determination. Wife provides the following facts in support of that determination: Wife has an advanced education; Wife worked sporadically throughout the marriage; Wife, at times, babysat or taught music lessons in her home; Wife has taught as many as five or six students; and Wife testified that she thought she could make considerable money teaching music.

¶18    Our review of the record reveals some additional evidence pertaining to Wife's ability to earn income. For instance, Wife testified that most recently she had three music students, with each paying her just under $20 per week or around $65 per month. Additionally, Husband testified that Wife has a bachelor's degree in education and a master's degree in viola performance and that Wife has gone back to school to get additional education in American Sign Language and special education instruction.

Husband further testified that Wife could make around $44,300 annually as a special education teacher, with a typical starting salary of $27,900. The parties' adult son, who was living with Wife at the time of the trial, testified that since the case began he has watched C.E.B. daily for approximately three to five hours. Wife testified that she had at one time worked half-days as an aide at a special education elementary school and that during that time she had a babysitter for C.E.B. Wife also testified that C.E.B. did well with the babysitters, who did not typically charge but were not able to watch C.E.B. for a long period of time such as a full day.

¶19    The court found that

> Although currently unemployed, . . . [Wife] has a Master's Degree and a teaching certificate. The Court further finds that while [Wife] is the primary caregiver for C.E.B., which takes a significant amount of time, she is presently capable of and in a position to, e.g., teach some music lessons. The Court therefore finds that it is fair and equitable to impute income to [Wife] of $1,260.00 per month, gross, while [Wife] is the primary caretaker for C.E.B.

The evidence pertaining to Wife's ability to teach music in her home demonstrates that she is capable of earning approximately $65 per month per student. The evidence does not, however, reveal the length or the number of lessons Wife would be required to teach each student to earn $65 a month. Therefore, it is unclear how many students Wife would have to teach, how many hours she would have to work per week, and whether it would be feasible given her responsibilities as the primary caregiver for a severely disabled child.[4] As such, without the benefit of the reasoning and additional findings by the trial court, we conclude that the trial

---

[4]The evidence at trial reveals that C.E.B. requires a significant amount of care—C.E.B. quite often has seizures, and it takes a considerable amount of time to feed, bathe, and care for him.

court's findings are inadequate to support its imputation of income determination, and we remand the child support matter to the trial court.[5]

## III. Division of the Marital Estate

¶20    Wife contends that the trial court erred in its division of the marital estate. Wife asserts that the court did not divide the marital property equally and failed to make adequate findings to support its unequal distribution of the parties' marital property.

¶21    In its property distribution determination, the trial court must consider several issues, as follows:

> First, the court must identify the property in dispute and determine whether each item is marital or separate property. Next, the trial court should consider whether there are exceptional circumstances that overcome the general presumption that marital property be divided equally between the parties. The

---

[5]On remand, the court should also review its decision to base the termination of C.E.B.'s child support on his ability to receive Social Security and Medicaid benefits in amounts currently unknown, which may or may not be sufficient to support C.E.B. after the age of majority. *See* Utah Code Ann. § 78B-12-105(1) (LexisNexis 2012) ("Every mother and father shall support their children."); *id.* § 78B-12-102(7)(c) ("'Child' means . . . a son or daughter of any age who is incapacitated from earning a living and, if able to provide some financial resources to the family, is not able to support self by own means."); *see also Kiesel v. Kiesel*, 619 P.2d 1374, 1377 (Utah 1980) (holding that the trial court was justified in continuing support payments to a child beyond her twenty-first birthday where child lacked the capacity to earn a living (citing Utah Code Ann. § 78-45-1, -2 (1953) (providing a definition of the term "child" similar to that used by the current statute))).

trial court is then required to assign values to each item of marital property so that the distribution strategy, whether equal or weighted in favor of one party, can be implemented. Finally, the court must distribute the items of marital property in a manner consistent with that distribution strategy, with a view toward allowing each party to go forward with his or her separate life.

*Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 15, 176 P.3d 476 (citations omitted). In addition, the trial court must make findings on those issues, as summarized by the Utah Supreme Court in *Gardner v. Gardner*, 748 P.2d 1076 (Utah 1988):

Failure of the trial court to make findings on all material issues is reversible error unless the facts in the record are clear, uncontroverted, and capable of supporting only a finding in favor of the judgment. . . . The findings of fact must show that the court's judgment or decree follows logically from, and is supported by, the evidence. The findings should be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached.

*Id.* at 1078 (omission in original) (citations and internal quotation marks omitted).

¶22 The trial court made the following findings on the distribution of the parties' property:

24. The parties stipulated that the marital home, . . . has a current appraised value of $190,000. The home has approximately $94,000 of equity.

25. The Court finds that the marital home should be awarded to [Wife], together with all its equity and the mortgage obligation.

. . . .

28. The Court finds that all the parties' musical instruments should be awarded to [Wife].

29. [Wife] should return the antique ironing board to [Husband] within ten days from entry of the Decree.

30. [Husband] should return the leaf blower to [Wife] within ten days from entry of the Decree.

31. All other personal property should remain with the party currently in possession of that property.

. . . .

38. In light of the Court's award of the marital home, together with all equity therein, and other personal property, to [Wife], [Husband] should be awarded his 401(k) and 457 accounts (in the approximate amount of $119,000.00), free and clear of any claim by [Wife].[6]

---

[6]We note that the trial court did not provide any oral rulings as it took the matter under advisement. The court did, however, enter a First Amended Supplemental Decree of Divorce. In the amended decree, the trial court made the same findings as previously articulated, albeit with slightly different language, but did not make any further substantiative findings

(continued...)

Unfortunately, these findings provide this court with neither enough detail nor enough subsidiary facts to disclose the steps by which the ultimate property distribution was reached.

¶23 In particular, the trial court assigned no value to the musical instruments awarded to Wife. In addition, it did not provide any explanation for the apparent unequal property division which awards $94,000 in home equity to Wife but $119,000 of 401(k) and 457 accounts to Husband. Nor did the court list what, if any, exceptional circumstances the court considered that were sufficient to overcome the general presumption that marital property be divided equally between the parties. *See Stonehocker*, 2008 UT App 11, ¶ 15; *see also Bradford v. Bradford*, 1999 UT App 373, ¶ 27, 993 P.2d 887 (holding that where exceptional circumstances exist, they must be "memoralize[d] in . . . detailed findings" (citation and internal quotation marks omitted)). As such, we are unable to determine whether the court erred in its unequal property distribution determination. As a result, we remand the matter to the trial court.

IV. Attorney Fees

¶24 Wife argues that the trial court erred by failing to award her sufficient attorney fees. Specifically, Wife argues that she should have been awarded all the attorney and legal fees she has incurred from the divorce proceeding because she is unemployed, impecunious, and in desperate need of assistance. Husband agrees that the court erred in its award of attorney fees and failed to make the proper findings. Based on Husband's concession of error and Wife's pro se status, we look past any potential preservation problems and address Wife's argument. *Cf. Nelson v. Jacobsen*, 669 P.2d 1207, 1213 (Utah 1983) ("[B]ecause of [the pro se litigant's] lack

---

[6](...continued)
or include any explanation or reasoning for its property distribution determination.

of technical knowledge of law and procedure [a layman acting as his own attorney] should be accorded every consideration that may reasonably be indulged." (third alteration in original) (citation and internal quotation marks omitted)).

¶25    The trial court awarded attorney fees to Wife based on the following findings,

> The Court finds, in light of all the relevant financial and other circumstances, including an application of the factors set forth in Rule 102, Utah Rules of Civil Procedure, that it is fair and equitable under all the circumstances that [Husband] should pay $4,000.00 of [Wife's] attorney's fees incurred, in addition to the $375.00 [Husband] was previously ordered to pay in the Court's May 10, 2011 Order. In making this finding, the Court has reviewed the Affidavit of Attorney's Fees filed by [Wife's] counsel and has taken into consideration the arguments of the parties both for and against an award of fees.

"[T]he trial court's award or denial of attorney fees must be based on evidence of the financial need of the receiving spouse, the ability of the other spouse to pay, and the reasonableness of the requested fees." *Leppert v. Leppert*, 2009 UT App 10, ¶ 25, 200 P.3d 223 (alteration in original) (citation and internal quotation marks omitted).

¶26    Here, the trial court simply ordered attorney fees "in light of all the relevant financial and other circumstances." The court failed to include specific findings on the financial need of Wife and the ability of Husband to pay. Because the trial court does not provide us with the requisite findings pertaining to the extent of Wife's need and Husband's ability to pay, we are unable to

determine whether Wife was awarded sufficient attorney fees below. As such, we remand the matter.[7]

## V. Remaining Issues

¶27    Even though appellate courts are generally lenient with pro se litigants, those litigants must still follow the appellate rules. *See Lundahl v. Quinn*, 2003 UT 11, ¶¶ 3–4, 67 P.3d 1000. Although we give Wife every reasonable indulgence due to her pro se status, her brief fails to meet even lenient standards for briefing, as explained below, on Wife's arguments pertaining to the court's alimony decision, contempt of court finding, visitation determination, bifurcation ruling, and child tax exemption decision. As such, we decline to consider these arguments.

¶28    Wife contends that the trial court erred in its alimony determination by failing to consider that Wife directly contributed to an increase in Husband's skill by allowing him to attend school

---

[7]Wife also seeks her attorney fees incurred on appeal. Throughout the majority of this appeal, Wife has appeared pro se and would not be entitled to attorney fees associated with such representation. *See Jones, Waldo, Holbrook & McDonough v. Dawson*, 923 P.2d 1366, 1374 (Utah 1996) (providing that the general rule is that "pro se litigants should not recover attorney fees for successful litigation" (citation and internal quotation marks omitted)). We do, however, note that Wife was represented by counsel during the early stages of her appeal until counsel's withdrawal on February 1, 2012.

Wife's appellate counsel filed the notice of appeal, notice of transcript request, various motions to extend time to file a docketing statement, and a docketing statement. Because Wife has prevailed on several of the issues on appeal, we award Wife such reasonable appellate attorney fees as she actually incurred and remand the matter to the trial court for calculation of those fees.

during the marriage. Wife does not, however, provide this court with either a citation to the record showing that this issue was preserved below or a statement of the grounds for seeking review of her alimony issue. *See* Utah R. App. P. 24(a)(5)(A)–(B). We are unable to find a point in the record at which Wife raised this argument or indicated to the trial court that it failed to consider her contribution to Husband's increased skills. Thus, we decline to consider Wife's alimony argument. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 ("Issues that are not raised at trial are usually deemed waived.").[8]

¶29    Wife also contends that the trial court erred in finding her in contempt of court without permitting her the statutory time period to respond. Again, Wife does not provide this court with either a citation to the record showing that this issue was preserved in the trial court or a statement of grounds for seeking review of this issue. Based on our review of the record, we determine that Wife did not inform the court that she was entitled to or needed more time to reply. Instead, after the GAL filed the contempt motion on May 24, the parties proceeded with the trial on May 31, and the court heard arguments pertaining to the contempt issue on June 8, the last day of trial. Thereafter, the court took the matter under advisement and issued its decision including its contempt finding on June 20. Because Wife proceeded to address the contempt issues without notifying the trial court of a need for additional time, we decline to consider this issue further.

¶30    Wife asserts that there is insufficient evidence to support the trial court's finding that she violated its order by intentionally interfering with N.B.'s counseling. Wife's argument essentially

---

[8]Wife also notes in her brief that Husband is paying only a portion of the monthly alimony awarded to Wife and argues that Husband should be required to pay the full amount. Any efforts to enforce the provisions of the decree of divorce must be addressed first to the trial court.

reargues the facts that were before the trial court. "However, a party challenging a trial court's factual finding must do more than merely reargue the evidence supporting his or her position; rather, the party is required to first marshal the evidence in support of the finding." *Hi-Country Estates Homeowners Ass'n v. Bagley & Co.*, 2008 UT App 105, ¶ 19, 182 P.3d 417 (citation and internal quotation marks omitted). Because Wife does not marshal the evidence, we affirm the trial court's contempt findings and conclusions.

¶31    Lastly, we decline to address Wife's arguments pertaining to the trial court's visitation determination, bifurcation determination, and child tax exemption decision for inadequate briefing. Rule 24(a)(9) of the Utah Rules of Appellate Procedure requires that the argument section of a brief "contain the contentions and reasons of the appellant with respect to the issues presented, . . . with citations to the authorities, statutes, and parts of the record relied on." Utah R. App. P. 24(a)(9); *see also State v. Green*, 2004 UT 76, ¶ 13, 99 P.3d 820 ("Implicitly, rule 24(a)(9) requires not just bald citation to authority but development of that authority and reasoned analysis based on that authority." (citation and internal quotation marks omitted)).

¶32    Wife's entire analysis concerning the court's visitation ruling consists of her assertion that Husband sexually abused the minor children. In so arguing, Wife fails to address the evidence indicating that no abuse occurred, i.e., the children's denial that any abuse occurred and the investigating detective's testimony that he closed the investigation because there was no evidence to support the allegations of sexual abuse. Because Wife fails to provide any reasoned analysis on the visitation issue, we conclude that she has failed to demonstrate any error in the trial court's visitation ruling.

¶33    Regarding the trial court's bifurcation ruling and child tax exemption determination, Wife recites the facts and states her desired outcome. Wife does not, however, provide any authority to explain the legal basis for that desired outcome. Because Wife

fails to provide any legal authority or analysis for her argument that the court erred in its bifurcation ruling and child tax exemption determination, we decline to consider these issues further.

CONCLUSION

¶34　Because neither party filed a parenting plan, joint legal custody was unavailable. As such, the trial court exceeded its discretion in awarding joint legal custody to the parties in this matter. Thus, we reverse the trial court's joint legal custody ruling and remand this issue to the court.

¶35　In light of the trial court's failure to make adequate findings or otherwise explain the basis for its imputation of income, marital property distribution, and attorney fees determinations, we cannot say that the trial court acted within its discretion in its determinations. We therefore reverse the court's imputation of income, marital property, and attorney fees rulings and remand those issues.

¶36　We decline to address Wife's arguments pertaining to the trial court's alimony decision, contempt of court finding, division of the marital estate, visitation determination, bifurcation ruling, and child tax exemption decision based on her failure to meet the briefing and preservation standards. As a result, we affirm the court's decision on each of these issues.

¶37　Affirmed in part and reversed and remanded in part.

———————